Case No.  CV 09-7000-JST (FFMx)                                        Date:  November 16, 2010
Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

Present: **Honorable JOSEPHINE STATON TUCKER, UNITED STATES DISTRICT JUDGE**

|  Ellen Matheson  |         N/A        |
|  Deputy Clerk    |   Court Reporter   |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

  Not Present                                                    Not Present

**PROCEEDINGS:** (IN CHAMBERS)  ORDER DENYING J2F's MOTION FOR SUMMARY JUDGMENT IN FULL, GRANTING IN PART AND DENYING IN PART J2F'S MOTION FOR SUMMARY ADJUDICATION (Doc. 69), GRANTING SARROW'S MOTION FOR LEAVE TO FILE A FOURTH-AMENDED COUNTERCLAIM (Doc. 45), and GRANTING SARROW'S MOTION TO CONTINUE DISCOVERY (Doc. 47)

## I. INTRODUCTION

Plaintiff and Counter-Defendant J2F Productions, Inc. ("J2F") filed suit against Defendant and Counter-Claimant Jason Sarrow ("Sarrow") seeking damages and injunctive relief for copyright infringement of the motion picture *Faire: An American Renaissance*, U.S. Copyright Registration Number Pau003409193 ("Faire I copyright") (Jacobson Decl., Doc. 69, Attch. 3, Exh. 3.)   Sarrow responded by filing a counterclaim against J2F and Counter-Defendant Douglas Jacobson ("Jacobson"), J2F's owner, alleging breach of oral contract and seeking to invalidate the Faire I copyright.  (*See* Third-Amended Counterclaim, Doc. 30.)

J2F now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, or in the alternative partial summary judgment, on its copyright infringement claim and for dismissal of Sarrow's counterclaim.  (Notice of Motion, Doc. 69, at 1.)  Sarrow has filed opposition, (Doc. 72,) to which J2F has replied (Doc. 76.)  Sarrow previously filed a motion for leave to file a fourth-amended counterclaim (Doc. 45) and, contingent on the Court granting Sarrow leave to amend, a motion to continue

___
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  CV 09-7000-JST (FFMx)                                      Date:  November 16, 2010

Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

discovery (Doc. 47), both of which J2F opposed.  The Court will address all three motions in turn.

Based on the reasons stated below, the Court:

1. DENIES J2F's motion for summary judgment in full;

2. GRANTS in part and DENIES in part J2F's motion for summary adjudication, finding that (i) Sarrow is judicially estopped from asserting any claim or interest arising out of the 2003 oral contract, (ii) a "work made for hire" agreement did not exist between Jacobson and Sarrow, and (iii) J2F's copyright infringement claim and Sarrow's counterclaim seeking cancellation of the Faire I copyright cannot be resolved due to genuine issues of material fact;

3. GRANTS Sarrow's motion for leave to file a fourth-amended counterclaim; and

4. GRANTS Sarrow's motion to continue discovery.

## II. BACKGROUND

This case arises out of a dispute over competing copyrights to a documentary film, *Faire: An American Renaissance* ("the Film"), as to which both J2F and Sarrow claim rightful ownership.  The undisputed facts follow.[1]  Sarrow is an actor, (Pl.'s Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s Facts"), Doc. 69-5, at ¶ 1,) and has been involved in the Renaissance Faire community for over twenty years (Pl.'s Response to Defendant's Separate Statement of Genuine Issues ("Pl.'s Response"), Doc. 76-3, at ¶ 3.)  Sarrow describes Renaissance Faires as a form of re-enactment, creating the atmosphere of a late sixteenth century Elizabethan-era town.  (Sarrow Decl., Doc. 74, at ¶

___
[1] Because Sarrow failed to follow the Court's specific instructions regarding the presentation of statements of undisputed facts and genuine issues for summary judgment motions, (*see* Initial Standing Order, Doc. 58, at 9 ¶ 10(c)(i),) the Court presents the undisputed facts from Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law (Doc. 69-5) and Plaintiff's Response to Defendant's Separate Statement of Genuine Issues (Doc. 76-3).

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
|---|---|

Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

5.) The "villagers" are often clothed in period dress, endeavor to speak Victorian English, and conduct exhibitions of Elizabethan era crafts, food, and entertainment. (*Id.*) Sarrow has participated in numerous Renaissance Faires as an actor and merchant selling goods and services. (*Id.*)

In the late 1990s, Sarrow became interested in the idea of making a documentary film about Renaissance Faires. (Pl.'s Facts at ¶ 5; Pl.'s Response at ¶ 1.) In 2003, Sarrow met Counter-Defendant Douglas Jacobson, J2F's owner, (Pl.'s Facts at 2 ¶ 3; Pl.'s Response at ¶ 5,) who is a film producer, director, and editor. (Pl.'s Facts at ¶ 2.) The two began discussing the idea of making a documentary film about Renaissance Faires and eventually entered into an oral agreement to produce the Film. (Pl.'s Facts at 2 ¶ 4; Pl.'s Response at ¶ 5.) Sarrow and Jacobson orally agreed to split the net proceeds from the movie after expenses were deducted. (Pl.'s Response at ¶ 6.) Sarrow and Jacobson never entered into a written agreement concerning the making of the Film. (Pl.'s Facts ¶ 7.)

Between 2003 and August 20, 2008, the "rough cut" of the Film was made. (*Id.* ¶ 11.) While Sarrow facilitated interviews with members of the Renaissance Fair community, (*id.* at ¶ 9,) Jacobson used his own equipment to shoot and edit the Film, with the editing being done from Jacobson's home. (Pl.'s Facts at ¶¶ 9-11, 16-17.) Sarrow did not pay Jacobson (*id.* at ¶ 15) or provide him with employee benefits or health insurance for his work. (*Id.* at ¶ 12.) Sarrow also did not report Jacobson as an employee, (*id.* at ¶ 14,) or pay any Social Security or Medicare employer's tax for Jacobson. (Id. at ¶ 13.)

On March 16, 2005, while the film was being made, Sarrow filed for bankruptcy. (Pl.'s Response at ¶ 23; Grace Decl. Exhs. 1 and 2.) He was granted a bankruptcy discharge on June 28, 2005. (Grace Decl. Exh. 2.) In his bankruptcy filing, Sarrow did not identify any unliquidated claims, partnerships, joint ventures, executory contracts, copyrights, or licenses in his schedule of assets. (Pl.'s Facts at ¶ 24.)

On or about August 20, 2008, Jacobson provided the "rough-cut" version of the Film to Sarrow. (Pl.'s Response ¶ 11.) The rough-cut is approximately 10 to 15 minutes longer than the final version of the Film. (Pl.'s Response at ¶ 12.) J2F later edited the rough-cut into a shorter version of the Film and then registered it as the Faire I copyright in September 2009. (Pl.'s Response at ¶¶ 15-16.) J2F then began selling the Faire I-

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No.  CV 09-7000-JST (FFMx) | Date:  November 16, 2010 |
|---|---|
| Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al. | |

copyright version.  (*Id.* at ¶ 15.)  Neither J2F nor Jacobson has paid Sarrow any money generated from these sales.  (*Id.* at ¶ 18.)  Beginning in September 2009, Sarrow began selling DVDs of the rough-cut version, (Pl.'s Facts at ¶¶ 19-20,) and to date, Sarrow has sold several hundred copies.  (*Id.*)

On September 25, 2009, J2F brought suit against Sarrow pursuant to 17 U.S.C. §§ 101 *et seq.* alleging copyright infringement for Sarrow's sale of the rough-cut DVDs.  (Compl. at 5).  As relief, J2F sought (1) to enjoin Sarrow from copying, advertising, selling, or distributing the rough-cut version of the Film and (2) to recover statutory damages for Sarrow's willful copyright infringement under 17 U.S.C. § 504(c)(2).  (*Id.* at 6.)  On November 4 and 5, 2009, Sarrow answered J2F's complaint and filed a counterclaim against J2F.  (Docs. 8 & 13.)  Sarrow has since amended his counterclaim three times.  Sarrow's third-amended counterclaim alleges that J2F breached the parties' 2003 oral agreement regarding the Film and, as to the Faire I copyright, seeks declarations of copyright invalidity and copyright non-infringement.  (Third-Amended Counterclaim at 10-11.)

On February 10, 2010, Sarrow submitted copyright applications for the registration of (1) the rough-cut of the Film (Pl.'s Response at ¶ 19; ) and (2) the "concept" of the Film, loosely titled "Nuggets."  (*Id.* at ¶ 20.)  Both applications were granted:  Registration Number PA 1-679-669, ("Faire II copyright"), and Registration Number Pau 3-453-368 ("the Nuggets copyright").  (Pl.'s Response ¶¶ 21-22; *see* Def.'s Request for Judicial Notice, Doc. 73, Exhs. B & D.)  The registration dates of the Nuggets and Faire II copyrights are February 10, 2010 and March 8, 2010, respectively.  (Def.'s Request for Judicial Notice, Exh. D & B.)[2]

As a result of acquiring the Faire II and Nuggets copyrights, on July 22, 2010, Sarrow filed a motion for leave to file a fourth-amended counterclaim to include a claim of copyright infringement against J2F.  (*See* Notice of Mot. and Mot. for Leave, Doc. 45.)  The second is a motion to continue the discovery cut-off date, which expired on June 20, 2010, in order for Sarrow to ascertain whether J2F has infringed Sarrow's Faire II and the

---

[2] Per Sarrow's request (Doc. 73), the Court takes judicial notice of Sarrow's copyright applications and registrations for the Faire II and the Nuggets copyrights.  (Def.'s Request for Judicial Notice, Doc. 73, Exhs. B & D.)

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
|---|---|
| Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al. | |

Nuggets copyrights. (Def.'s Mot. to Cont. Disc., Doc. 47, at 6-7.) J2F has opposed both motions (Doc. 51 & 53.)

On August 31, 2010, J2F filed a motion for summary judgment, or in the alternative partial summary judgment, seeking favorable judgment on its copyright infringement claim and Sarrow's third-amended counterclaim. (Notice of Mot. and Mot. for Summ. J., Doc. 69.) J2F alleges that there is no genuine dispute that (1) Jacobson and J2F made the Film and were not employed by Sarrow; (2) there is no written agreement transferring any rights to the Film to Sarrow; (3) Sarrow's alleged 2003 oral contract to assign a copyright is barred by the Copyright Act, 17 U.S.C. §§ 201(d)(1) and 204(a) and by the California Statute of Frauds, California Civil Code § 1624(a)(1); (4) Sarrow lacks standing to bring a claim for breach of the 2003 oral contract because of his bankruptcy discharge on June 28, 2005; (5) Sarrow's copyright applications contain materially false information and the registrations based thereon should be invalidated; and (6) Sarrow has infringed the Faire I copyright by copying and selling DVD copies of the rough-cut of the Film. (Pl.'s Pts. & Auths. in Supp. Mot. Summ. J., Doc 69-1, at 3-4.)

Sarrow opposes summary judgment on the grounds that there remain genuine issues of material fact as to the validity of J2F's Faire I copyright and who owns the rights to the Film. (Def.'s Mem. & Pts. in Opp. to Mot. Summ. J., Doc. 72, at 4-5.) Specifically, Sarrow first argues that he was the creator and author of the Film and he employed Jacobson to act as the cameraman, editor, and executive producer of the Film. (*Id.* at 14.) Thus, the Film was created under a "work for hire" agreement with Sarrow serving as the employer, vesting the Film's copyright interest in Sarrow. (*Id.* at 14-15.) Second, Sarrow argues that he has a valid copyright registration in his rough-cut version of the Film and, therefore, J2F's copyright is invalid. (*Id.* at 15.) Finally, Sarrow argues that there are significant factual issues as to the amount of work Sarrow and Jacobson each devoted to the Film, (*id.* at 15-16,) and, at the very least, the parties are joint authors of the Film, each entitled to a copyright interest in the Film. (*Id.* at 18-19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  CV 09-7000-JST (FFMx)                                    Date:  November 16, 2010
Title:  J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

### III.     DISCUSSION

#### A.  Motion for Summary Judgment, or in the Alternative, Summary Adjudication.

J2F moves for summary judgment, or in the alternative summary adjudication, arguing that there is no genuine issue as to any material fact regarding (1) J2F's copyright infringement claim, (2) Sarrow's counterclaim seeking cancellation of J2F's Faire I copyright registration, and (3) Sarrow's counterclaim alleging breach of the 2003 oral contract.  (Notice of Mot. Summ. J. at 1.)

The Court finds that Sarrow is judicially estopped from asserting any claim or interest arising out of the 2003 oral contract.  The Court also finds that a "work made for hire" agreement did not exist between Sarrow and Jacobson.  There exist genuine issues of material fact, however, as to J2F's copyright infringement claim and Sarrow's counterclaim seeking cancellation of the Faire I copyright.  The Court therefore DENIES J2F's motion for summary judgment in full and GRANTS in part and DENIES in part J2F's motion for summary adjudication.  Fed. R. Civ. P. 56(d).

##### 1.  Legal Standard

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |

Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

### 2. Sarrow is Judicially Estopped from Asserting Any Claim or Interest Arising Out of the 2003 Oral Contract

Sarrow alleges in his third-amended counterclaim that, in December 2003, he entered into an oral contract with J2F and Jacobson regarding the production of the Film. (Third-Amended Counterclaim at 9.) Sarrow further alleges that J2F breached that oral contract on September 11, 2009, by registering the Faire I copyright in J2F's name and not in Sarrow's. (*Id.* at 10.) In his opposition to J2F's motion for summary judgment, Sarrow also argues that "at the very least, the parties formed a partnership by virtue of their 2003 agreement." (Pl.'s Opp. at 18-19.)

On March 16, 2005, a year and a half after entering into the oral contract, Sarrow filed for bankruptcy. (Pl.'s Response at ¶ 23; Grace Decl. Exh. 1.) In his bankruptcy filings, Sarrow indicated that he had no (1) interests in *partnerships* or joint ventures, (2) contingent or *unliquidated claims*, (3) *executory contracts*, or (4) or patents, *copyrights* and other intellectual property as of that date. (Grace Decl., Exh. 1., Def.'s BK Filing) (emphasis added.) Sarrow was granted a discharge pursuant to 11 U.SC. § 727 on June 28, 2005. (Grace Decl. Exh. 1.)

"[A] discharge of debt by a bankruptcy court . . . is sufficient acceptance to provide a basis for judicial estoppel . . . ." *Hamilton v. State Farm Fire & Casualty Company*, 270 F.3d 778, 784 (9th Cir. 2001). "[J]udicial estoppel ensures that debtors make a 'full and honest disclosure' of their assets in the original bankruptcy proceeding." *Rose v. Beverly Health Rehab. Servs., Inc.*, 295 Fed. App'x. 142, 144 (9th Cir. 2008) (quoting Hamilton, 270 F.3d at 785). To support a finding of judicial estoppel in the bankruptcy context, the Court must find that "(1) [the party] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the party's] omission did not result from mistake or inadvertence." *White v. Wyndam Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010); *see New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

In his 2005 bankruptcy filings, Sarrow failed to include the 2003 oral contract as an asset. (Grace Decl. Exh. 1) Sarrow does not allege that this resulted from mistake or inadvertence. Based on those filings, the bankruptcy court granted a discharge. (*Id.* Exh. 2.) "If [a debtor] failed properly to schedule an asset . . . that asset continues to belong to

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  CV 09-7000-JST (FFMx)                          Date: November 16, 2010
Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

the bankruptcy estate and d[oes] not revert to [the debtor]." *Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001).  Because Sarrow was granted discharge and failed to list the 2003 oral contract in his bankruptcy filings, the Court finds that he is judicially estopped from (1) bringing any claim against J2F arising out of the 2003 oral contract or (2) deriving any ownership rights in the Film or the Film's copyright based on the 2003 oral contract.[3]

> 3. <u>There Was No "Work Made for Hire" Agreement Between Sarrow and Jacobson</u>

Sarrow argues that Jacobson contributed to the Film under a "work made for hire" agreement and, as a consequence, J2F has no copyright interest in the Film.  (Def.'s Opp. at 14-15.)  "[I]f the work is made 'for hire,' 'the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.'" *Gladwell Gov't Servs., Inc. v. County of Marin*, 265 Fed. App'x 624, 625-26 (9th Cir. 2008) (quoting 17 U.S.C. § 201(a)-(b)).  A "work made for hire" is "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned . . . as a part of a motion picture . . . if the parties expressly agree in a written instrument signed by them."  17 U.S.C § 101.  The Film fits into neither category and is therefore not a work made for hire.

To determine whether a work is prepared by an employee within the scope of employment, "a court first should ascertain, using principles of general common law of agency, whether the work was prepared by an employee or an independent contractor." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 750-51 (1989).  This is because § 101(1) applies to employees, and § 101(2) applies to independent contractors. *Reid*, 490 U.S at 753.  Because Sarrow and Jacobson never entered into a written agreement, the Film was not a specially-ordered or -commissioned work § 101(2).  (Pl.'s Facts at ¶ 7.)  The only way the Film could qualify as a "work made for hire," then, is if

---

[3] Because the Court finds that Sarrow is judicially estopped from bringing a claim based on the 2003 oral contract, the Court need not address whether the contract is barred by the Copyright Act, 17 U.S.C. §§ 201(d)(1) and 204(a) and by the California Statute of Frauds, California Civil Code § 1624(a)(1).  (*See* Pl.'s Pts. & Auths. at 3-4.)

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
| Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al. | |

(1) Jacobson was Sarrow's employee and (2) Jacobson made the Film within the scope of his employment with Sarrow. Neither factor is present here.

The Restatement (Third) of Agency defines "employee" as "an agent whose principal controls or has the right to control the manner and means of the agent's performance of work." Restatement (Third) Agency § 7.07 (2006). "In determining whether a hired party is an employee under the general common law of agency, [the Court] consider[s] the hiring party's right to control the manner and means by which the product is accomplished." *Reid*, 490 at 751.

Here, Sarrow provides no evidence that he "hired" Jacobson, that Jacobson was Sarrow's employee, or that Jacobson worked on the Film under an employment agreement. The Court need only look to the control – or lack thereof – that Sarrow had over Jacobson in the context of making the Film. *See* Restatement (3d) Agency § 7.07. It is undisputed that Jacobson filmed and edited the Film himself, while utilizing his own equipment (Pl.'s Fact at ¶¶ 16-17) and editing from his home. (*Id.* at ¶¶ 9-11); *see Reid*, 490 at 751 (holding that relevant factors in determining whether a hired party is an employee are "the source of the instrumentalities and tools" and "the location of work"). Sarrow provides no evidence that he had control over Jacobson's film-making process or that he monitored Jacobson's work. Indeed, Sarrow only acquired a copy of the rough-cut version of Film because Jacobson provided it to him. (Pl.'s Response at ¶ 11.)

Beyond the apparent lack of a principal-agent relationship between Sarrow and Jacobson, however, Sarrow never compensated Jacobson with benefits or wages, (*id.* at ¶¶ 12, 15,) paid any Social Security or Medicare employer's tax for Jacobson, nor reported to the IRS that Jacobson was an employee. *See Reid*, 490 at 751 (holding that relevant factors in determining whether a hired party is an employee are "payment" and "the provision of employee benefits"). These facts alone refute Sarrow's claim. Based on these undisputed facts, the Court finds that the Film was not a "work made for hire."

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  CV 09-7000-JST (FFMx)                              Date:  November 16, 2010
Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

    4.  J2F's Copyright Infringement Claim and Sarrow's Counterclaim Seeking Cancellation of the Faire I Copyright Cannot Be Resolved on Summary Judgment

### a. Joint Authorship Over the Film

"[A] co-owner of a copyright cannot be liable to another co-owner for infringement." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1034 (9th Cir. 2000) (quoting *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984)).  "The authors of a joint work are co-owners of copyright of the work."  17 U.S.C. § 201.  A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.

The Court considers three criteria when determining whether a work is jointly authored under § 101:  "[1] whether the putative coauthors ma[d]e objective manifestations of a shared intent to be coauthors . . . [2] whether the alleged author superintended the work by exercising control . . .[and] [3] whether the 'audience appeal of the work' can be attributed to both authors, and whether 'the share of each in its success can be appraised.'"  *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (quoting *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)).  "Control in many cases will be the most important factor." *Aalmuhammed*, 202 F.3d at 1234.

Here, factual disputes remain as to whether Sarrow and Jacobson objectively manifested a shared intent to be co-authors.  The parties agree that Sarrow and Jacobson entered into an oral contract regarding the production of the Film in 2003, (Pl.'s Facts at ¶ 4,) and that Sarrow and Jacobson agreed to split the net profits from the movie.  (Pl.'s Response at ¶ 6; Jacobson Decl. at ¶ 6.)  It is also undisputed that Sarrow contributed to the Film by facilitating the interviews of members in the Renaissance Faire community.  (*Id.* at ¶ 9.)  These facts alone create a triable issue.  *See Richlin*, 531 F.3d at 968 (9th Cir. 2008) ("Even if a person's contribution is minor, once he is accorded joint authorship status, he enjoys all benefits of joint authorship.").

Beyond this, however, disputed material facts exist as to the amount of control that Jacobson and Sarrow each had over making the Film.  *See Aalmuhammed*, 202 F.3d at 1234.  Sarrow describes his role as the "producer of the movie," (Sarrow Decl., Doc. 74,

___
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
|---|---|

Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

at ¶ 15,) and claims to have "obtain[ed] a large amounts [sic] of archival film, photographs, digital media, artwork, collector's items and Faire footage that was liberally used in the Film." (*Id.* at ¶ 14.) Jacobson, on the other hand, claims Sarrow's role was to merely "assist Jacobson [in] mak[ing] connections within the insular Rennie community." (Jacobson Decl. at ¶ 5.) In fact, Jacobson claims he was "the sole author" of the Film, (*id.* at ¶ 7,) who "had complete control over all creative decisions pertaining to the Film" (*Id.* at ¶ 8) and did all the filming and editing for the Film. (Pl.'s Fact at ¶¶ 16-17; Jacobson Decl. at ¶ 7.)

Summary judgment is not appropriate where the movant fails to demonstrate the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex*, 477 U.S. at 322. Here, the Court concludes that there is a genuine issue of material fact as to whether Sarrow and Jacobson co-authored the Film and, as a result, whether J2F and Sarrow are co-owners to the Film's copyright. This issue of fact precludes summary judgment on both J2F's copyright infringement claim and Sarrow's cancellation counterclaim.

### b. Judicial Estoppel of Sarrow's Copyright Interest

J2F argues that Sarrow has no copyright interest in the Film because he did not list any such copyright interest in his bankruptcy filing. (Pl.'s Pts. & Auths. in Supp. Mot. Summ. J. at 7.) Sarrow argues that at the time of his bankruptcy filing, the Film was merely an uncopyrightable idea. (Def.'s Opp. at 20-21.)

As discussed above, *see supra* Part III.A.2, for judicial estoppel to apply, J2F has the burden of showing that Sarrow assumed a contrary position to the one asserted in bankruptcy, the bankruptcy court adopted the contrary position, and Sarrow's omission did not result from mistake or inadvertence. *White*, 617 F.3d at 478. J2F has not met its burden here.

First, J2F has not provided any legal authority or argument as to why Sarrow was under a duty to disclose unregistered copyrights on his bankruptcy schedules. *See Peterson v. Luna Bronze, L.C.*, No. 2:07CV00054DS, 2008 WL 3833593, at *2 (D. Utah Aug. 2008). Even if Sarrow were under a legal duty to list an unregistered copyright, there remains a genuine issue of material fact as to when the Film was created and, hence, when it became copyrightable. *See* 17 U.S.C. § 101 ("A work is 'created' when it is

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  CV 09-7000-JST (FFMx)                           Date:  November 16, 2010
Title:  J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

fixed in a copy or phonorecord for the first time; where a work is prepared over a period time, the portion of it that has been fixed at any particular time constitutes the work as of that time, where the work has been prepared in different versions, each version constitutes a separate work."). J2F's Statement of Uncontroverted Facts does not provide a date of when filming began or when the Film became "fixed" in a tangible medium of expression. *See id.* ("A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.")

Second, even if J2F provided both legal authority regarding Sarrow's duty to disclose unregistered copyrights in bankruptcy and undisputed facts as to when the Film was created, judicial estoppel would still be inappropriate. Because Sarrow believed that nothing but an uncopyrightable idea existed at the time of his bankruptcy, no evidence suggests that he purposefully omitted his purported unregistered copyright from his bankruptcy filings. *See White*, 617 F.3d at 476-77 (holding that the absence of an intentional omission prevents the application of judicial estoppel); *Johnson v. Or. Dept. of Human Res. Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998) ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply."); *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) ("Judicial estoppel seeks to prevent the deliberate manipulation of the courts; it is inappropriate, therefore, when a party's prior position was based on inadvertence or mistake."). Because there would remain a genuine issue of material fact as to whether Sarrow mistakenly or inadvertently failed to list his unregistered copyright in his bankruptcy schedules, summary adjudication would still be improper.[4]

### B. Motions For Leave to File a Fourth-Amended Counterclaim and to Continue Discovery

Based on Sarrow's recently-acquired Faire II and Nuggets copyrights, he seeks leave to file a fourth-amended counterclaim (Counter-Claim. Mot. for Leave, Doc. 45, at

---

[4] Because Sarrow does not dispute the existence of the 2003 oral contract, but rather affirmatively relies on its existence in claiming ownership over the Film, (Def.'s Opp. at 8-10,) there is no genuine issue as to whether he omitted the 2003 oral contract from his bankruptcy filings by inadvertence or mistake. *See* Part III.A.2.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
| Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al. | |

7-8.) Contingent on the Court granting that motion, Sarrow also seeks sixty (60) days of additional discovery concerning whether J2F has infringed Sarrow's copyrights. (Counter-Claim. Mot. to Cont. Disc., Doc. 47, at 6-7.) Based on the reasons stated below, the Court GRANTS both motions.

In the Ninth Circuit, "[i]t is generally [the] policy to permit amendment with extreme liberality, although when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citing *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir.1999)) (internal citations and quotation marks omitted). Rule 15(a)(2) instructs the Court to "freely" grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic." *Chodos*, 292 F.3d at 1004.

Here, Sarrow seeks to re-assert a copyright infringement counterclaim, which the Court previously dismissed without prejudice on January 11, 2010. (*See* Doc. 20.) At that time, the Court dismissed Sarrow's copyright infringement counterclaim because Sarrow had not shown that he either owned a copyright to the Film or that he applied to the Copyright Office and was denied. (Doc. 20 at 4-5.) Because Sarrow now owns a copyright to a rough-cut version of the Film, i.e. Faire II copyright, and to the concept of the Film, i.e. the Nuggets copyright, (Def.'s Request for Judicial Notice, Doc. 73, Exhs. B & D,) good cause exists to allow him to re-assert a copyright infringement claim.

Despite this showing, however, the Court must determine whether Sarrow's motion for leave to amend has resulted from undue delay or is made in bad faith, and if granted, whether it will prejudice J2F. The Court set the cut-off date to amend pleadings for April 30, 2010 (Doc. 32,) and Sarrow filed his motion for leave to amend on July 22, 2010 (Doc. 45). J2F argues that Sarrow's motion has resulted from undue delay and was filed in bad faith because the Faire II and Nuggets copyrights were registered in February 2010 and March 2010, respectively, and Sarrow could have filed a motion for leave to amend well before the April 30 cut-off date. (Pl.'s Opp. to Mot. for Leave, Doc. 51, at 5.) J2F further argues that allowing Sarrow to file a fourth-amended counterclaim will result in undue prejudice for J2F because "additional delay will cause Sarrow's damaging

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
|---|---|

Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al.

activities to continue unchecked," will cause a delay in trial, and J2F will be forced to depose Sarrow again   (*Id.* 5-6.)  The Court is not convinced.

First, as Sarrow points out, the United States Copyright Office issues post-dated registrations, so a copyright's registration date simply represents the date on which the copyright application was filed.  (Def.'s Reply, Doc. 63, at 63.)  Sarrow alleges he did not receive notice of his copyright registrations until after the April 30 deadline to amend. (*Id.* at 3.)  The timing of Sarrow's motion does not appear have resulted from an undue delay, nor does it appear to be brought in bad faith.

Further, J2F fails to persuade the Court that it would suffer undue prejudice if Sarrow filed a fourth-amended counterclaim.  First, Sarrow's conduct and any resulting damages goes to the ultimate question of this case and remains an unresolved question for the trier of fact.  Finally, the Court does not anticipate the amended filing will result in a trial delay.

For these reasons, the Court GRANTS Sarrow's motion to file his fourth-amended counterclaim and GRANTS parties thirty (30) additional days, beginning on November 16, 2010, to conduct discovery, which shall be limited exclusively to Sarrow's newly-added copyright infringement counterclaim.

## IV. CONCLUSION

For the reasons stated above, the Court:

1. DENIES J2F's motion for summary judgment in full;

2. GRANTS in part and DENIES in part J2F's motion for summary adjudication, finding that (i) Sarrow is judicially estopped from asserting any claim or interest arising out of the 2003 oral contract, (ii) a "work made for hire" agreement did not exist between Jacobson and Sarrow, and (iii) J2F's copyright infringement claim and Sarrow's counterclaim seeking cancellation of the Faire I copyright cannot be resolved due to genuine disputed issues of material fact;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. CV 09-7000-JST (FFMx) | Date: November 16, 2010 |
| Title: J2F Productions Inc. etc. v. Jason Sarrow, etc., et al. | |

    3. GRANTS Sarrow's motion for leave to file a fourth-amended counterclaim; and

    4. GRANTS Sarrow's motion to extend discovery.

    Accordingly, the Court grants an additional thirty (30) days of discovery, beginning on November 16, 2010, which shall be limited to Sarrow's newly-added copyright infringement claim.

    Finally, the Court sets **January 10, 2011** as the last day for hearing on any dispositive motion as to Sarrow's newly-added copyright claim only. All other previously-set dates remain on calendar: (1) Final Pre-Trial Conference, January 24, 2011; (2) Exhibit Conference, February 4, 2011; (3) Jury Trial, February 8, 2011. (Doc. 71.)

    Initials of Preparer: <u>enm</u>